21-1494-cr
*United States v. Ballard*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of May, two thousand twenty-three.

PRESENT: JOSÉ A. CABRANES,
JOSEPH F. BIANCO,
SARAH A. L. MERRIAM,

*Circuit Judges*.

_____

United States of America,

*Appellee*,

v.                                                            21-1494-cr

Antonio T. Ballard, AKA Tone,

*Defendant-Appellant*.

_____

FOR DEFENDANT-APPELLANT:      MURRAY E. SINGER, Esq., Port Washington, NY.

FOR APPELLEE:      STEVEN D. CLYMER, Assistant United States Attorney *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from the United States District Court for the Northern District of New York (McAvoy, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is hereby **AFFIRMED**.

Defendant-appellant Antonio Ballard appeals from the district court's judgment of conviction, entered on June 8, 2021, for sex trafficking offenses related to minor victims, including a person with the initials T.M. Specifically, in the second trial on the indictment, Ballard was convicted of two counts of persuading and inducing a child to engage in prostitution in violation of 18 U.S.C. § 2422(b), two counts of financially benefitting from sex trafficking of a child in violation of 18 U.S.C. §§ 1591(a)(2) and (b)(2), and one count of sex trafficking of a child in violation of 18 U.S.C. §§ 1591(a)(2) and (b)(2).[1] The evidence at trial established that Ballard was part of a prostitution scheme around Binghamton, New York, involving sex trafficking of minors, that solicited customers through the website Backpage. The district court sentenced Ballard to concurrent 210-month terms of imprisonment on each of the five counts of conviction, followed by a 20-year term of supervised release.

On appeal, Ballard argues that his conviction should be reversed and the case remanded for a new trial on the following grounds: (1) the district court abused its discretion in denying his motion—made after trial began—to represent himself; (2) the district court abused its discretion in denying his post-verdict claim that the government suppressed information extracted from T.M.'s cellphone in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (3) the prosecutor's improper argument in the rebuttal summation, regarding the content of T.M.'s cellphone, violated

---

[1] In 2018, this Court vacated Ballard's prior conviction on various counts under the same superseding indictment and remanded the case to the district court for a new trial due to prosecutorial misconduct in the rebuttal summation. *United States v. Ballard*, 727 F. App'x 6 (2d Cir. 2018) (summary order).

his constitutional right to due process of law; and (4) his trial counsel was constitutionally ineffective for failing to pursue certain avenues of investigation regarding T.M.'s cellphone, as well as Ballard's own telephone number. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## I. Ballard's Request to Represent Himself During Trial

Ballard argues that the district court abused its discretion in denying his request to represent himself at trial. However, as set forth below, we conclude that Ballard abandoned his request for self-representation and has accordingly waived that claim.

If "a defendant's request to proceed *pro se* is informed, voluntary and unequivocal, the right of a defendant in a criminal case to act as his own lawyer is unqualified if invoked prior to the start of the trial." *Williams v. Bartlett*, 44 F.3d 95, 99 (2d Cir. 1994) (emphasis removed) (internal quotation marks and citation omitted). "Once asserted, however, the right to self-representation may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether." *Wilson v. Walker*, 204 F.3d 33, 37 (2d Cir. 2000) (internal quotation marks and citation omitted). "[R]elinquishment of the right to proceed *pro se* may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself." *United States v. Barnes*, 693 F.3d 261, 271 (2d Cir. 2012) (internal quotation marks and citation omitted).

On the first day of trial, after the jury was sworn and the district court delivered its preliminary instructions, Ballard's counsel inquired, at Ballard's request, whether Ballard could deliver the opening and closing statements, but have counsel question the witnesses. The district court stated that it would not allow for hybrid representation. *See United States v. Rivernider*, 828

3

F.3d 91, 108 (2d Cir. 2016) ("A defendant has a right either to counsel or to proceed pro se, but has no right to 'hybrid' representation, in which he is represented by counsel from time to time, but may slip into pro se mode for selected presentations." (internal citation omitted)).  On the second day of trial, after the government delivered its opening statement, Ballard made a request to represent himself, which the district court denied.  In denying the request, the district court left open that possibility that Ballard could renew the request during the trial if circumstances changed.  At the close of the proceedings the next day, immediately following defense counsel's cross-examination of T.M., Ballard told the district court:  "Your Honor, thank you for denying my motion for pro se.  Thank you."  Joint App'x at 540.  The Government then explicitly asked: "[I]f the defendant is now withdrawing *that* motion, would [he] be comfortable putting that on the record?"  *Id.* at 541 (emphasis added).  Ballard responded:  "Yeah we'll put it on the record," which the court confirmed.  *Id.*

It "reasonably appears" from Ballard's unprompted thanking of the court and the withdrawal of his motion that Ballard "abandoned his initial request to represent himself."  *Barnes*, 693 F.3d at 271 (internal quotation marks and citation omitted).  Additionally, the district court denied Ballard's motion subject to renewal, but at no time did Ballard seek to renew his motion, and there is no evidence that a renewal of defendant's "request would have been fruitless."  *Wilson*, 204 F.3d at 38 (internal quotation marks and citation omitted).  Ballard's conduct after trial also confirms his equivocation and abandonment; he filed several motions for the appointment of new counsel and was represented by new counsel at sentencing.  "[B]y accepting appointed counsel's representation for the months leading up to sentencing, [Ballard] made clear by conduct that he had abandoned his request to represent himself."  *United States v. Crespo*, 651 F. App'x 10, 12 (2d Cir. 2016) (summary order).

4

Accordingly, Ballard abandoned his initial request to represent himself at trial, and therefore has waived his previously asserted Sixth Amendment right to self-representation. *See Wilson*, 204 F.3d at 38 ("In view of the fact that there were two subsequent changes in the attorney appointed to represent [defendant] and the question of self-representation was left open for possible further discussion, we conclude that [defendant's] failure to reassert his desire to proceed *pro se* constituted a waiver of his previously asserted Sixth Amendment right.").

## II. *Brady* Claim

Ballard contends that he is entitled to a new trial based on the government's alleged failure to provide a "full extraction report" of T.M.'s BLU cellphone in violation of its obligation under *Brady*. Appellant's Br. at 28. He argues that the government's failure to disclose that report undermined his ability to present his defense, which was based on challenging T.M.'s credibility. Because Ballard raised his *Brady* claim in a Rule 33 motion for a new trial, "we review the denial of the motion for abuse of discretion." *United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008) (internal quotation marks and citations omitted).

It is well established that "[t]here are three components of a true *Brady* violation: [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *United States v. Hunter*, 32 F.4th 22, 30–31 (2d Cir. 2022) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

Here, as the district court determined in denying Ballard's post-trial motion for acquittal or a new trial, Ballard's *Brady* claim fails because there is no basis for his assertion that the government suppressed any evidence. The government's obligations under *Brady* extend to only what "is *known to the prosecutor*." *Hunter*, 32 F.4th at 35 (quoting *United States v. Avellino*, 136

F.3d 249, 255 (2d Cir. 1998)).  At trial, a law enforcement witness testified that he used Cellebrite software to perform a "logical extraction" of T.M.'s phone, which is a limited forensic analysis that "does not get all of the deleted data from a phone."  Joint App'x at 204.  From that testimony, Ballard suggests that the government had in its possession, but failed to disclose to Ballard, a dossier of data that T.M. had deleted from her phone.  However, that conclusory and speculative assertion, with no evidentiary basis, does not establish a *Brady* violation.  As the district court correctly noted, "[t]he government provided the [extraction report for T.M.'s cellphone] that [Ballard] used at trial" and "[n]o evidence indicates that another report that contained the information [Ballard] wishes he had was in the government's possession at the time of trial."[2] Joint App'x at 885; *see United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) ("Clearly the government cannot be required to produce that which it does not control and never possessed or inspected." (internal quotation marks and citation omitted)); *see also United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) ("*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess." (internal quotation marks and citation omitted)).

In sum, the district court did not abuse its discretion in concluding that Ballard failed to establish a *Brady* violation in connection with its disclosure of the information extracted from T.M.'s cellphone.[3]

---

[2]  Ballard relatedly argued in the district court that the fact that the government conducted a more comprehensive analysis on his cell phone as compared to T.M.'s phone suggested that the government withheld evidence.  Although Ballard does not raise that argument on appeal, we note that there is nothing in the record here to suggest that the government withheld evidence because it used different investigative techniques on two different devices.  Thus, this contention is similarly conclusory and speculative.

[3]  To the extent Ballard faults his trial counsel for failing to obtain an independent forensic examination of T.M.'s cellphone to determine whether additional data could be recovered, as discussed *infra*, such a claim can be asserted under 28 U.S.C. § 2255.  *See, e.g.*, *United States v. Yang Chia Tien*, 638 F. App'x 19, 25

### III. Challenge to Prosecutor's Rebuttal Summation

Ballard contends that he is entitled to a new trial because the prosecutor improperly argued in its rebuttal summation that the absence of photographs in the forensic report of T.M.'s phone confirmed that no photographs were stored on the phone. More specifically, in an effort to rebut any suggestion that T.M., rather than Ballard, took photographs of herself for the Backpage advertisements used for the prostitution operation, the prosecutor referenced the forensic extraction report of T.M.'s phone, noted the lack of any photographs in the report, and argued, "[i]f T[.]M[.] took those photographs, they'd be on that [BLU] phone that's in evidence that [law enforcement] examined forensically." Joint App'x at 796.

As a threshold matter, we agree with Ballard that the prosecutor's argument was improper given the lack of any evidentiary basis for it. In particular, the testimony established that the report included contacts, text messages, and a log of telephone calls, and that the type of extraction performed on T.M.'s phone "does not get all of the deleted data from a phone." Joint App'x at 204. Importantly, there was no testimony or evidence in the record as to whether the extraction would have captured certain other non-deleted data, such as photographs. In other words, there was no evidentiary basis for the jurors to reasonably infer that the absence of any photographs in the forensic examination performed on T.M's phone necessarily meant that there *never* were any photographs stored on the phone. Although the prosecutor's statement was improper, Ballard has failed to demonstrate that it warrants a new trial.

"[A] defendant who seeks to overturn his conviction based on alleged prosecutorial misconduct in summation bears a 'heavy burden.'" *United States v. Farhane*, 634 F.3d 127, 167

---

(2d Cir. 2015) (summary order) ("[Appellant's] *Brady* and/or *Giglio* claims are conclusory and unsupported by the record, and if they require further factual development, [appellant] can raise them in a § 2255 petition.").

(2d Cir. 2011) (quoting *United States v. Feliciano*, 223 F.3d 102, 123 (2d Cir. 2000)). As we stated in Ballard's first appeal, a new trial based on prosecutorial misconduct is only appropriate in "rare" cases. *Ballard*, 727 F. App'x at 9 (quoting *United States v. Caracappa*, 614 F.3d 30, 41 (2d Cir. 2010)); *see also Farhane*, 634 F.3d at 167 ("[T]he comment, when viewed against the entire argument to the jury, and in the context of the entire trial, [must be] so severe and significant as to have substantially prejudiced [the defendant], depriving him of a fair trial." (internal quotation marks and citations omitted)). "In considering whether inappropriate remarks rise to the level of prejudicial error, we examine 'the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct.'" *United States v. Coplan*, 703 F.3d 46, 86 (2d Cir. 2012) (quoting *United States v. Gansman*, 657 F.3d 85, 96 (2d Cir. 2011)).

After analyzing the various factors in the context of the trial record, we conclude that this is not one of those rare cases where the prosecutor's misstatement was so severe as to warrant a new trial. The misconduct was an isolated argument in lengthy summations and was mitigated by the fact that it was "an aberration in an otherwise fair proceeding." *United States v. Elias*, 285 F.3d 183, 191 (2d Cir. 2002); *see also United States v. Melendez*, 57 F.3d 238, 241 (2d Cir. 1995) ("[M]ost of the cases in which we have reversed convictions as a result of prosecutorial misconduct have involved repeated improper statements whose aggregate effect was more likely to undermine the fairness of the trial."). Moreover, although no immediate curative instruction was given, the district court's general instruction to the jury at the beginning and end of trial, which instructed them that statements and arguments by attorneys are not evidence, helped mitigate any potential prejudice from the prosecutor's misstatement of the evidence. *See Elias*, 285 F.3d at 190 (noting that while the Court had previously held a particular general jury instruction "insufficient in

response to specific misconduct by the prosecutor," the prosecutor's misstatement in summation "was of lesser severity . . . and therefore needed less in the way of a cure").

With respect to the certainty of conviction absent the misconduct, we first note that the issue of whether T.M. had photographs on her phone that were used in the online advertisements and whether she was involved in the creation of the advertisements were not necessarily critical in the trial. Indeed, T.M. acknowledged at trial that "[e]ither [she] or [Ballard] would write out the [online] ad and post it." Joint App'x at 509. Additionally, another victim testified that Ballard sometimes used T.M.'s phone to take photographs for advertisements. Thus, in light of other evidence establishing T.M's involvement in the creation of the Backpage advertisements, it is difficult to discern how the prosecutor's improper argument regarding the contents of her phone could have materially impacted the outcome of the trial. Moreover, although we found in the first trial that Ballard's guilt was not established by "overwhelming evidence," *Ballard*, 727 F. App'x at 11 (internal quotation marks and citations omitted), the government introduced substantial new evidence in the second trial. Specifically, three new witnesses who had been housed with Ballard at the county jail testified that Ballard made incriminating statements to them. For example, one witness who had a previous acquaintance with T.M. testified that Ballard had told him: "I'm locked up for her. It was like I was pimpin' the little bitch . . . that's why I'm incarcerated. I can't believe she told on me." Joint App'x at 601. Similarly, another witness testified that Ballard told him that "[Ballard] had a girl named T.M. that he would make, he would drop her off [at] different places to make money, to have sex with guys." *Id.* at 644. Considering this additional evidence against Ballard, together with the relatively low severity of the prosecutor's improper argument in the context of the entire trial, we conclude that the isolated misconduct did not "infect[] the trial

9

with unfairness as to make the resulting conviction a denial of due process." *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) (quoting *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999)).

Accordingly, we conclude that the prosecutor's misstatement in the rebuttal summation does not warrant a new trial.

## IV.     Ineffective Assistance of Counsel Claim

Finally, Ballard argues that his trial counsel was ineffective for failing to (1) obtain a full extraction report from T.M.'s phone, and (2) challenge the reliability of his own cell phone records.

To establish ineffective assistance of counsel, Ballard must show that his attorney's performance was both objectively unreasonable and prejudicial to his defense. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 692 (1984). Where, as here, a defendant asserts an ineffective-assistance-of-counsel claim on direct appeal through newly retained counsel, we have three options: "(1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent [28 U.S.C.] § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us." *United States v. Leone*, 215 F.3d 253, 256 (2d Cir. 2000). With respect to exercising our discretion among those options, we have emphasized that "[o]ur general approach is to decline to review ineffective assistance claims on direct review without prejudice to a defendant later raising them collaterally under 28 U.S.C. § 2255" because that approach "permits district courts to develop a factual record and to hear from the allegedly ineffective attorney." *United States v. Bodnar*, 37 F.4th 833, 844–45 (2d Cir. 2022); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) (expressing preference for deciding ineffective assistance claims on collateral review).

Here, the record has not been adequately developed on direct review with respect to Ballard's ineffective assistance claim. For example, we do not know whether trial counsel made

any efforts to conduct an additional forensic examination of T.M.'s cellphone or what the results of any such additional examination would have been. Similarly, the trial attorney has not been provided with an opportunity to respond to Ballard's allegation that "he failed to investigate the fact that two cell phones recovered from [Ballard] at the time of his arrest were found to have been using the same phone number on the same days and at the same time." Appellant's Br. at 32. In short, given the insufficient factual record to decide Ballard's ineffective assistance claim at this juncture, we decline to address that claim on direct review and conclude that Ballard may raise that claim in a petition under Section 2255.

*                    *                    *

We have reviewed Ballard's remaining arguments and conclude that they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11